# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**CURTIS GUILLORY**                               **CASE NO.  2:22-CV-06109**

**VERSUS**                                               **JUDGE JAMES D. CAIN, JR.**

**STEPHEN C DWIGHT**                        **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 20] filed by defendant Stephen C. Dwight, in his official capacity as District Attorney for Calcasieu Parish, in response to the employment discrimination suit brought by plaintiff Curtis Guillory. Plaintiff opposes the motion. Doc. 32.

## I.
### BACKGROUND

This suit arises from plaintiff's employment as an assistant district attorney with the Calcasieu Parish District Attorney's Office ("CPDAO"). Plaintiff, who is Black, began working as a prosecutor with the misdemeanor division on June 20, 2018, under District Attorney John DeRosier. When Mr. Dwight was elected to succeed Mr. DeRosier as District Attorney in November 2020, his transition team evaluated lawyers employed under the DeRosier administration and recommended that plaintiff not be retained. Accordingly, plaintiff's position was terminated on January 8, 2021.

Plaintiff then filed a charge with the EEOC on March 19, 2021, alleging racial discrimination. Specifically, he asserted that he was paid less than his white counterparts,

denied a promotion to felony prosecutor in December 2020, and discharged both because of his race and in retaliation for his requests for a promotion and pay raises. Doc. 20, att. 6. The EEOC apparently dismissed the charge and issued a notice of suit rights.[1] Plaintiff then filed suit in state court, raising claims of discrimination and hostile work environment based on the alleged pay discrepancies, failure to promote, termination, and being subjected to a stricter level of scrutiny than his white colleagues. Doc. 2.

Defendant removed the suit to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. He now moves for summary judgment, arguing that the hostile work environment claim is procedurally barred due to plaintiff's failure to raise it with the EEOC and that plaintiff cannot carry his burden with respect to the merits of any claim. Doc. 20. Plaintiff opposes the motion. Doc. 32.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial.

---

[1] The record does not contain any reference to this action, but defendant does not contest the timeliness of the petition.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2. A plaintiff may prove intentional retaliation or discrimination under Title VII using either direct or circumstantial evidence. When circumstantial evidence is involved, the court uses the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze the claim. Under that framework, the plaintiff must first

establish a prima facie case by showing, in the case of a discrimination claim, that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was discharged or otherwise suffered adverse employment action; and (4) he was treated less favorably than members outside of her protected class or was replaced by a member outside of that class. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 363 (5th Cir. 2004). If the plaintiff makes this showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory motive for its action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). At the final stage, the burden shifts back to plaintiff to show that the employer's explanation is not true and is instead a pretext for the real, discriminatory purpose. *Id.*

Plaintiff's claims of racial discrimination are divided into the following three categories: (1) pay discrepancies, (2) failure to promote, and (3) his discharge in January 2021. The court addresses each in turn.

## A. Pay Discrimination

Defendant argues that any pay discrimination claims arising before May 23, 2020, have prescribed and that plaintiff cannot meet his burden as to any remaining claim. Under Title VII, a plaintiff generally must file a charge of discrimination within 300 days of the alleged discriminatory act.[2] *Harrison v. Estes Express Lines*, 211 F. App'x 261, 264 (5th Cir. 2006) (per curiam). The Lilly Ledbetter Fair Pay Act of 2009, however, amended Title

---

[2] The filing period is 180 days, or 300 days if the plaintiff has instituted proceedings with a state or local agency with authority to grant relief. *Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356, 363 n. 5 (5th Cir. 2013). In this case plaintiff initiated proceedings with the Louisiana Commission on Human Rights and so the 300 day period applies.

VII to restart the statute of limitations with each discriminatory pay period.[3] Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111–2, 123 Stat. 5. Additionally, a plaintiff may recover back pay for up to two years preceding the filing of the charge if the "unlawful employment practices" that occurred during the 300-day filing period are "similar or related to unlawful employment practices with regard to discrimination that occurred outside the time for filing a charge." 42 U.S.C. § 2000e-5(e)(3)(A)–(B).

Plaintiff alleges that he was paid less than his white counterparts from the time he was hired in June 2018 until his discharge on January 8, 2021. He remained in the same position during this time period, under the supervision of the same District Attorney. His EEOC charge, filed on March 19, 2021, is timely as to discriminatory acts falling between that date and May 20, 2020. As to pay discrimination, however, any complaints about his pay within that period appear sufficiently related to his complaints throughout his employment with CPDAO. Accordingly, he may recover for any unfair pay practices occurring from March 19, 2019, forward.

As to the merits of the claim, plaintiff must show that he was paid "less than a member of a different race was paid for work requiring substantially the same responsibility." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981). The *McDonnell Douglas* framework applies in the absence of direct evidence

---

[3] The Act amends Title VII, in relevant part, to state that:

> an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).

of discriminatory intent. *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018). Accordingly, after plaintiff has made his *prima facie* case, the burden shifts to defendant to "articulate a legitimate, non-discriminatory reason for the pay disparity." *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F.Supp.2d 832, 854 (S.D. Tex. 2011). The plaintiff must then rebut defendant's explanation with evidence showing the justification is pretextual. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 467 (5th Cir. 2021).

Plaintiff was appointed as an ADA in the misdemeanor section at an annual salary of $55,016.00. He received pay increases of $2,516.80 in December 2018, $1,497.60 in May 2019, $8,486.40 in December 2019, and $2,500.00 in July 2020. Doc. 20, att. 4, p. 27. He also received a pay decrease of $11.20 in July 2018, with CPDAO's records stating "adj-placed on state warrant." *Id.* The final increase was a legislative pay raise, setting plaintiff's salary at $70,005.60 by the time he was discharged in January 8, 2021. Meanwhile, he points to white comparators Nicholas Algero and Conrad Huber, who were both hired as trial assistants in August 2019 and then promoted to assistant district attorneys in the misdemeanor section upon passing the bar in October. With their promotions both men achieved a salary of $65,000.00. *Id.* at 26–27. At that time, plaintiff's salary was $59,019.20. He asserts that District Attorney DeRosier, upon being informed, told plaintiff he was unaware of the discrepancy and gave him the $8,486.40 pay raise, bringing Mr. Guillory's salary to $67,505.60. At the same time, however, Mr. Algero and Mr. Huber received raises of $2,516.80, bringing their salaries to $67,516.80 (the same as plaintiff's before the "state warrant" adjustment). After plaintiff received his legislative pay raise of

$2,500.00 on July 1, 2020, Mr. Algero and Mr. Huber each received a regular pay raise of $2,516.80. *Id.* at 27–28. One month later, Mr. Algero and Mr. Huber were both promoted to the felony division. *Id.*

Defendant provides an affidavit from Mr. DeRosier, who states that plaintiff, like Mr. Algero and Huber, started work as an ADA just after passing the bar. Doc. 20, att. 11, ¶¶ 4, 15. He explained that, under his administration, new attorneys in the misdemeanor section were paid a starting base salary that was adjusted year to year based on market conditions, in order to attract new graduates from law schools in Baton Rouge and New Orleans. *Id.* at ¶ 23. He also explained that, when some attorneys received legislative pay raises, he would attempt to provide pay raises to the others in order to keep salaries comparable. *Id.* at ¶ 24. Unlike legislative pay raises, however, pay raises provided by the office could not be offered in round numbers, resulting in slight discrepancies. *Id.* at ¶ 30.

When he learned of the discrepancy in plaintiff pay due to differences in the 2018 and 2019 base salaries, DeRosier stated, he adjusted plaintiff's salary to equalize salaries among the misdemeanor division prosecutors. *Id.* at ¶ 27. He also noted that Amariah Fort, who is Black, started as an ADA in the misdemeanor division at the same base salary as plaintiff in July 2018. *Id.* at ¶ 28. She achieved faster promotion and more frequent pay increases, however, rising to the domestic violence division in September 2018 and then to the felony division in October 2019. *See* doc. 20, att. 4, p. 26. Accordingly, her salary as of July 2020 was $77,514.00. *Id.* Taylor Alexander, who is also Black, started as an ADA in the misdemeanor division in May 2019 at a base salary of $60,008.00. *Id.* at 26. She has

achieved promotion to the domestic violence division and her salary as of July 2020 was $72,501.60. *Id.*

It is undisputed that plaintiff began his career in 2018 at a substantially lower base pay than his two white comparators, who were hired in 2019. It is also undisputed that, for a two-month period, they were earning a higher salary than he was while doing the same job. Defendant has proffered a legitimate and non-discriminatory reason for this discrepancy, however. Mr. DeRosier's detailed affidavit is supported by CPDAO salary information and shows how legislative pay increases and changing market rates, rather than race, drove decisions on base salaries and raises. Plaintiff offers nothing to rebut defendant's explanation, other than speculation and the assertion that "[d]iscovery responses from the CPDAO bear no indication that any ADA other than Mr. Guillory ever had to ask for a salary increase during the period of Mr. Guillory's employment." Doc. 32, p. 5. The only discovery attached to plaintiff's opposition, however, contains no interrogatories or requests relating to requests for pay raises during plaintiff's tenure or at any other time. Additionally, defendant's response to interrogatories indicates that there have been no other race-based employment discrimination claims made against CPDAO in the last five years. Doc. 32, att. 2, pp. 7–8. Only one other charge was filed against CPDAO with the EEOC in the last five years was in April 2020, alleging religious discrimination, and that charge was likewise dismissed. *Id.*

To carry his burden at the third step of the *McDonnell Douglas* framework, a plaintiff is required to "produce substantial evidence of pretext." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (quoting *Auguster v. Vermilion Par. Sch.*

*Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (internal quotations omitted). Plaintiff has produced nothing to call into question defendant's credibility or otherwise undermine his race-neutral and legitimate explanations for the salary discrepancy. Because he has not met his burden, the defendant is entitled to summary judgment on this claim.

### B.  Hostile Work Environment

Defendant contends that the hostile work environment is barred due to plaintiff's failure to raise it with the EEOC. To bring a suit under Title VII, a complainant must first file a charge of discrimination with the EEOC and exhaust his administrative remedies. *Melgar v. T.B. Butler Pub. Co., Inc.*, 931 F.3d 375, 378–79 (5th Cir. 2019). The scope of this requirement is "defined in light of two competing Title VII policies that it furthers," as the Fifth Circuit has explained:

> On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, "[a] *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance."

*Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (internal citations omitted). Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge, or that could not "reasonably be expected to grow out of the

charge[.]" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco*, 448 F.3d at 789). For a hostile work environment claim, however, "if one act alleged to have created the hostile work environment is timely exhausted, a court may consider the entire scope to the hostile work environment claim." *Id.* (internal quotations omitted). In determining exhaustion, the court uses a fact-intensive analysis and construes the charge broadly. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

> Plaintiff's charge read:
>
> I was hired around June 2018 as an Assistant DA, Misdemeanor Attorney by the District Attorney Mr. DeRosier, White Male, after he made a racially offensive comment to the state legislature. From my time of hire, I was the lowest paid of the Assistant DA's. White male DA's were paid more than me. Most recently, in December 2020, I was denied a promotion to the position of Felony Prosecutor. A White Male was selected for the position. On January 8, 2021, I was discharged.
>
> I was not given a reason for being paid less than my White counterparts. I was not given a reason for my non selection for promotion. I was told by the District Attorney, Mr. DeRosier, White Male, that I was being discharged for my performance.
>
> I believe that I was paid less, denied a promotion, and discharged in retaliation for my request for a promotion and pay raises due to my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Doc. 20, att. 6.

There are no allegations of any harassment directed towards plaintiff. Instead, his claims are clearly based on his pay discrepancy, failure to promote, and discharge, for which he alleges he was not given an overt reason. Construing the charge broadly, the court cannot find a hostile work environment claim or a basis from which it could reasonably be expected to grow. Accordingly, the claim will be dismissed for failure to exhaust.

Even if the court reached the merits, plaintiff could not succeed. To establish a prima facie hostile work environment claim, as alleged here, the plaintiff must show that (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on her race, gender, etc.; (4) the harassment was severe enough to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the discrimination but failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). On the severity element, an employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). Because Title VII is "only meant to bar conduct that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace," courts have set a high standard for determining what constitutes a hostile work environment. *Lewis v. M7 Prods., LLC*, 427 F.Supp.3d 705, 720 (M.D. La. 2019) (internal quotation omitted). The conduct must be both subjectively and objectively offensive, meaning that the victim perceived the environment as hostile or abusive and that a reasonable person would do likewise. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Courts examine such a claim based on the totality of the circumstances, looking to the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it "unreasonably [interfered] with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007). "No single factor is determinative." *WC&M Enters., Inc.*, 496 F.3d at 399.

Plaintiff asserts that CPDAO created a hostile work environment through the pay discrepancies, failure to promote, and by subjecting him to a stricter level of scrutiny than his white male peers. The first two allegations are connected to separate claims; plaintiff fails to show how they likewise amounted to harassment that contributed to a hostile work environment. As for the scrutiny, plaintiff has also maintained that he was unaware of the reasons for his lack of promotion or of any problem with his performance until his time of discharge. Doc. 32, p. 6. Indeed, he states that he was surprised to hear criticisms from the transition committee because he had never received a reprimand or even a performance evaluation throughout his tenure. *Id.* at 5–6. His bare-bones allegations are contradicted by his own admissions and insufficient to meet the severity prong of his prima facie case. Accordingly, the claim would be subject to dismissal even if exhausted.

### C. Failure to Promote

Plaintiff also claims a Title VII violation because he was not promoted out of the misdemeanor section during his time at CPDAO. To sustain such a claim, he must first make a prima facie case that (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of the protected class or otherwise failed to promote plaintiff because of his race. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013). The burden then shifts to defendant to produce a legitimate, nondiscriminatory reason for its actions. *Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Finally, plaintiff must produce evidence showing that defendant's proffered reason is a pretext for discrimination. *Id.*

Plaintiff's burden at the first step is "very minimal." *Knox v. PHC-Cleveland, Inc.*, 24 F.Supp.3d 584, 589 (S.D. Miss. 2014). The court will assume qualifications for the sake of argument. As described above, plaintiff has shown that two white colleagues (Mr. Algero and Mr. Huber) hired the year after him were promoted to the felony division in August 2020.[4] Doc. 20, att. 4, pp. 27–28; doc. 20, att. 11, ¶¶ 16–18. In his opposition, Mr. Guillory alleges without any supporting documentation that he "spoke to Mr. DeRosier about his goal of moving to the felony division" and that Mr. DeRosier told him he wanted to help with that goal but never indicated what type of help he would provide or offered any advice on how to improve his performance. Doc. 32, p. 5. In his affidavit, Mr. DeRosier stated:

> The promotion from the misdemeanor section to a felony division is not a decision that was taken lightly under my administration. Felony cases tend to be based upon more serious facts and damages, involve more complex law enforcement investigations, tend to be defended by more aggressive and experienced opposing counsel, and carry much higher stakes in terms of victims' rights and the safety of the community at large. I had no policy that promotion from the misdemeanor section to a felony division was based solely upon seniority or date of hire. That promotion decision was necessarily subject to a merit-based inquiry as to which attorneys *were most capable of handling felony cases* and which attorneys also showed the necessary skills, work ethic, and diligence necessary to keep up with the case load of a felony division.

Doc. 20, att. 11, ¶ 10 (emphasis in original). He also described the skills that had earned Amariah Fort, Taylor Alexander, Conrad Huber, and Nicholas Algero promotion out of the

---

[4] Defendant argues that these allegations represent an impermissible expansion of plaintiff's EEOC charge, which only complained of the denial of a promotion to felony prosecutor in December 2020. Defendant's response to the EEOC, however, includes an affidavit from Mr. Algero discussing his own promotion to the felony division [doc. 20, att. 4] as well as a response to the failure to promote claim that discusses ongoing issues with plaintiff's performance, without limitation to any specific opening or opportunity he was allegedly denied. Accordingly, the court finds that his claim is exhausted.

misdemeanor section, noting in particular the initiative taken by Mr. Algero to help keep the office running during the COVID-19 pandemic, and how each of these prosecutors showed themselves capable of handling more difficult cases. *Id.* at ¶¶ 11–13, 16–18. In contrast, plaintiff's progress "remained slow compared to his contemporary attorneys." *Id.* at ¶ 14. Mr. DeRosier continued:

> He struggled in the courtroom and as an orator. Mr. Guillory was reported often as being unprepared or underprepared for court, leading to adverse results. Mr. Guillory was often physically absent from the office. When he was present in the office, Mr. Guillory was often reported to me as handling matters for his private law firm rather than handling his business as an assistant district attorney.

*Id.* at ¶ 14. Nevertheless, Mr. DeRosier stated that it was not his practice "to issue reprimands or negative performance reviews" and that he instead let attorneys like Mr. Guillory remain in the misdemeanor section in hope that they would improve. *Id.* at ¶ 9.

Mr. DeRosier's affidavit meets defendant's burden of showing a legitimate and race-neutral reason for Mr. Guillory's denial of promotion. His explanations are bolstered by the fact that two Black prosecutors hired within the same year as plaintiff were promoted out of the misdemeanor section. To show pretext, plaintiff must demonstrate that defendant's proffered explanation was false or unworthy of credence or that he was clearly better qualified than the applicant chosen for the promotion. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). Plaintiff presents nothing on the second issue. On the first, he points only to the contents of his personnel file, which he alleges was empty save for a form entitled "Affirmative Action Data Record" which states at the top:

> The purpose for this Data Record is to comply with government record keeping, reporting, and other legal requirements. Periodic reports are made to the government on the following information. The completion of this data record is optional. If you choose to volunteer the requested information please note that all Data Records are kept in a Confidential File and are not a part of your Application for Employment or personnel file. Please note: YOUR COOPERATION IS VOLUNTARY. INCLUSION OR EXCLUSION OF ANY DATA WILL NOT AFFECT ANY EMPLOYMENT DECISION.

Doc. 32, att. 1. There is no argument, however, that defendant feigned unawareness of Mr. Guillory's race. Accordingly, the retention of this form alone fails to raise any issue as to defendant's credibility. Plaintiff fails to carry his burden and defendant is likewise entitled to summary judgment on this claim.

### D. Discharge

Finally, plaintiff alleges that he was terminated because of his race when the new District Attorney took office. Again, he must first show that (1) he is a member of a protected class, (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside of the protected class or that similarly situated employees of a different race were more favorably treated. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). The court will again assume qualification. Defendant maintains that he falls short on the fourth prong, however. To this end it provides an affidavit from Stephen Dwight, who states that plaintiff was discharged on January 8, 2021, on the recommendation of his transition team, but that his executive staff included attorney Bobby Holmes and that he hired Charles Draughter as a prosecutor on January 11, 2021. Doc. 20, att. 14, ¶¶ 3, 8–10. Both Mr. Holmes and Mr. Draughter are also Black.

"While not outcome determinative, [the fact that an employee is replaced by someone of the same race] is certainly material to the question of discriminatory intent." *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 n. 7 (5th Cir. 1997). In such circumstances, a plaintiff must produce evidence to convince the court that his membership in a protected class was a motivating factor in his termination in order to satisfy the fourth prong. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). Accordingly, plaintiff can only succeed at the first step of *McDonnell Douglas* if he shows that similarly situated members outside of his protected class were treated more favorably.

Plaintiff produces nothing on this front. He complains that the transition committee raised infractions that had not previously been brought to his notice and attacks the affidavits submitted by defendant from plaintiff's former coworkers, accusing him of falling short on various expectations. But he does not show that different standards were applied to any similarly situated white employee. Accordingly, he fails to make out a prima facie case of discrimination based on his discharge and defendant is entitled to summary judgment.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 20] will be

**GRANTED** and all claims will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 29th day of January, 2024.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**